Adelbert G. CLOSTERMANN, Executor of the Estate of Charles W. Feist, Deceased, Appellant,

v.

The GATES RUBBER COMPANY, a Colorado corporation, Appellee.

No. 21774.

United States Court of Appeals Ninth Circuit.

May 13, 1968.

Adelbert G. Clostermann (argued), Portland, Or., in pro. per.

Kenneth E. Roberts (argued), Ridgway K. Foley, Jr. of Mautz, Souther, Spaulding, Kinsey & Williamson, Portland, Or., for appellee.

Before JERTBERG, BROWNING and CARTER, Circuit Judges.

JAMES M. CARTER, Circuit Judge.

This is a workmen's compensation case involving the laws of the State of Oregon. The question presented is whether the appellee, Gates Rubber Company, (hereafter "Gates") complied with the Oregon Workmen's Compensation Act so as to preclude additional recovery by appellant in an independent action, after the decedent Feist applied for and received workmen's compensation benefits.

Jurisdiction in the district court was based on diversity of citizenship, 28 U.S.C. § 1332. Jurisdiction of this court is pursuant to 28 U.S.C. § 1291.

## FACTS

We must consider the evidence in a light most favorable to Gates. All intendments are in favor of the sufficiency of the District Court's findings of fact.

Gates is a Colorado corporation which maintained a warehouse in Portland, Oregon for a number of years prior to the date of Mr. Feist's injury. Feist was a long time employee of Gates. In 1962, a wholly owned subsidiary owned by Gates called Columbine Stores, Inc., (hereafter "Columbine"), took over a Medford, Oregon tire recapping business called Bud's Tire Exchange, Inc. Pursuant to the Oregon Workmen's Compensation Act,[1] Bud's Tire Exchange, Inc., was considered by the State Industrial Accident Commission (SIAC) to be a hazardous occupation. Columbine was covered by the Act pursuant to its filing in January 1962. The SIAC continued coverage and payment under the name of "Bud's Tire Exchange" with a cross-reference to Columbine.

On January 31, 1965, Columbine was liquidated into and merged with Gates. Columbine ceased doing business in Oregon the next day. On February 2, 1965, the decedent Feist sustained an injury in the course and scope of his employment at the Gates' warehouse in Portland. On May 20, 1965, Feist signed a SIAC claim form. This was received by the SIAC on May 24, 1965. The SIAC entered its order of August 5, 1965, awarding Feist compensation for temporary total disability and for medical expenses. Feist's expenses were paid pursuant to the order only to the time of discovery of a cancerous condition. The SIAC disclaimed responsibility for the cancerous condition as not resulting from the injury of February 2, 1965. Subsequently Feist died from cancer.

On October 14, 1965, Feist, through his then attorney, Clostermann, subsequently named executor of Feist's estate and now the appellant in this case, filed an application for rehearing with the SIAC. This application was denied. On the basis of this application for rehearing, the District Court found that Feist knowingly applied for and received Workmen's Compensation benefits.

## DISCUSSION

Appellant contends that Feist did not knowingly apply for and receive Workmen's compensation benefits, claiming that at the time the SIAC claim was signed, Feist was under heavy medication and that he did not know what he was signing. Although disclaiming fraud, appellant also contends that the merger of Gates and Columbine did not occur on January 31, 1965, before Feist's

---

1. The original workmen's compensation law was changed by the 1965 Legislature (effective January 1, 1966). Since the injury and claim of Feist antedated the new Act, references shall be made to the pre-1966 Workmen's Compensation Law.

injury, but at a much later date. Both are factual issues. Findings of fact shall not be set aside unless "clearly erroneous." Rule 52, Fed.R.Civ.P., 28 U.S.C. A finding is "clearly erroneous" when, although there is evidence to support it, the reviewing court, on the entire evidence, is left with the definite and firm conviction that a mistake has been committed. United States v. United States Gypsum Co., 333 U.S. 364, 394–395, 68 S.Ct. 525, 92 L.Ed. 746 (1948); Nuelsen v. Sorensen, 293 F.2d 454 (9 Cir. 1961). The appellee, Gates, is entitled to the benefit of all reasonable inferences and to have the evidence viewed in a light most favorable to it, and if when so viewed there was substantial evidence to sustain the judgment it cannot be reversed. Stacher v. United States, 258 F.2d 112 (9 Cir. 1958), cert. den. 358 U.S. 907, 79 S.Ct. 232, 3 L.Ed.2d 228. The evidence in the instant case, most favorable to Gates, clearly supports the findings.

Once Feist had applied for and received the benefits under the Act, he was precluded from bringing any action for damages against his employer. ORS 656.152 provides:

"(1) Every workman subject to * * * (the Act) * * * who, while so employed, sustains an accidental injury * * * are (sic) entitled to receive from the Industrial Accident Fund the sums specified * * *

(2) The right to receive such sums is in lieu of all claims against his employer on account of such injury or death, except as otherwise specifically provided in * * * (the Act) * *".

■ Appellant contends that Gates failed to comply with the Oregon Workmen's Compensation Act and he is therefore not precluded from bringing independent action against the employer Gates, even though Feist, while alive, received benefits under the Act. The District Court found that Gates' employees in its Medford tire business and its employees in the Portland warehouse were subject to the Act on the date of the accident. We agree.

Columbine was engaged in a hazardous occupation and it made proper filings pursuant to the Act. It also contributed to the State Industrial Accident Fund. When Columbine was liquidated and merged with Gates, Gates became subject to the Act as a result of the "wholly wholly" clause of ORS 656.022 (1965), which provides:

"(1) All persons engaged as employers in any of the hazardous occupations specified in * * * (the Act) * * shall be subject to * * * (the Act); provided, that any such employer may be relieved of certain of the obligations imposed by those statutes * * * by filing with the commission written notice of an election not to be subject thereto in any manner specified in those statutes * * *

(4) It is the purpose of this section that an occupation and all work incidental thereto and all workmen engaged therein shall be *wholly subject to or wholly outside* the provisions of * * * (the Act)." [Emphasis supplied.]

In the case of Butler v. State Industrial Accident Commission, 212 Or. 330, 318 P.2d 303 (1957), the court said that "the legislative intent is apparent that all employers engaged in occupations defined as hazardous are made subject to the Act (unless they otherwise elect), and thereby workmen engaged in such occupations become subject to it * * *".

Appellant Clostermann's contention that Gates was not subject to the Act on the date of the accident cannot stand in view of ORS 656.026, which provides:

"Any employer engaged in a hazardous occupation * * * who does not give to the commission written notice of his rejection under * * * (the Act) * * * is subject to * * * (the Act) * * * until and including the following June 30 * * * unless before June 1, * * * his rejection is filed with the commission, whereupon, from and including the succeeding July 1," (he will no longer be subject to the Act).

The trial court properly found that even if Gates had filed a notice of rejection of the Act on the day it took over Columbine and its tire business, it would have been subject to the Act from that date until June 30, 1965. Both Gates' employees in its Medford tire business and its employees in the Portland warehouse were subject to the Act on the date of the accident.

The trial court held that Feist's sole remedy was under the SIAC, and that appellant, his executor, could not maintain this action, we agree. The judgment of the District Court is affirmed.