Motion to dismiss September 5, denied September 11, 1956,
submitted on briefs January 7, reversed and remanded
September 11, 1957

MANKE, ADMINISTRATRIX *v.* NEHALEM LOGGING
CO. ET AL
301 P. 2d 192
315 P. 2d 539

Winslow & Winslow, Tillamook, for the motion.

Robert Y. Thornton, Attorney General, and Ray H. Lafky, Assistant Attorney General, Salem, as attorneys for State Industrial Accident Commission, contra.

PER CURIAM.

This is a motion by plaintiff-respondent to dismiss the appeal, based principally on the ground that the order appealed from is not an appealable order.

The action is to recover damages for death by wrongful act. The State Industrial Accident Commission appeared by the attorney general pursuant to ORS 656.582, and filed an answer in which it was alleged in substance that the plaintiff's sole remedy was under the Workmen's Compensation Law. The case having been put at issue on this question, a trial was had which eventuated in the order appealed from. This order, entered April 16, 1956, after finding that the evidence was insufficient to sustain the allegations of the answer filed by the commission, dismissed the answer with prejudice. Notice of appeal was served and filed on June 14, 1956.

ORS 656.582 (1) directs the commission to request the attorney general to defend an employer in personal injury litigation where it appears that "the plaintiff's sole right of recovery" is under the Workmen's Compensation Law, and subdivision 2 of that section provides:

"If the Attorney General files an answer in such litigation alleging the defense that the plaintiff's sole remedy is under the workmen's compen-

sation law, the filing of such answer shall suspend all further proceedings in such litigation other than the trial of the defense that the plaintiff's right of recovery is under the workmen's compensation law, until such defense has been finally determined by the court. An appeal to the Supreme Court from the order or judgment finally disposing of such defense may be taken by either party as in other cases.''

■■ As the order appealed from is one "finally disposing of'' the defense interposed by the commission, an appeal therefrom is clearly authorized by the last sentence of the statute quoted. Hence, the argument of the plaintiff that the order is not final because ''plaintiff's action is still pending,'' is beside the point. The question is not governed by the general statute authorizing appeals (ORS 19.010, 19.140), and therefore such cases as *Durkheimer Inv. Co. v. Zell,* 161 Or 434, 90 P2d 213, involving an interpretation of these provisions, are not controlling here. In *Jackman v. Jones,* 191 Or 356, 229 P2d 963, we held that a judgment in favor of the commission in a proceeding brought pursuant to ORS 656.582 was appealable, and in *Ashern v. Settergren,* 180 Or 287, 176 P2d 645, we recognized, although the question was not directly involved, that the statute authorized an appeal by the commission from an adverse judgment. The statute makes no distinction as between the rights of the plaintiff and of the commission in this regard. Were we to yield to the contention of the respondent that the statute means that an appeal may only be taken by the commission after the case between the immediate parties to the action had been fully tried, we would thereby emasculate the statute, for, in that view, the appeal would then be from a final judgment for the plaintiff on the merits, and that which by the terms of the statute is

made a final order for the purpose of appeal would thus be reduced to the status of an intermediate order.

The other grounds of the motion, namely, that the notice of appeal was not served and filed within the statutory time, and that it does not contain any description of the order appealed from, are so obviously wanting in merit that they do not call for discussion.

The motion to dismiss is denied.

**ON THE MERITS**

Robert Y. Thornton, Attorney General and Ray H. Lafky, Assistant Attorney General, of Salem, for appellant.

Winslow & Winslow, of Tillamook, for respondent.

McALLISTER, J.

This is an action brought by Virgie Manke, as administratrix of the estate of her deceased son, Ronald Manke, against the defendants, Nehalem Logging Co. and Reinhold Fauser, to recover damages for the alleged wrongful death of said decedent. The complaint alleges in substance that the defendants owned and operated a shingle mill in Tillamook county, including a mill pond in connection therewith; that on June 22, 1955, Ronald Manke began to work for defendants upon and about said mill pond and on the same date accidentally fell into said pond and was drowned; that Ronald was then 17 years of age; that defendants permitted Ronald to perform said work "without any permit or certificate of any kind" and that his death was the result of the negligence of the defendants as more particularly alleged in the complaint.

Pursuant to the provisions of ORS 656.582,[1] the

[1] ORS 565.582. "(1) If an employer subject to ORS 656.002 to 656.590 is made defendant in any personal injury litigation brought against him by a workman in his employ, or by the guardian, personal representative or beneficiary of such workman, on account of injuries received by such workman arising out of and in the course of his employment by such employer, and it appears that the plaintiff's sole right of recovery is under ORS 656.002 to 656.590, the commission shall request the Attorney General to defend the employer in such litigation. The Attorney General shall cooperate with the commission in such defense and represent the employer as attorney.

"(2) If the Attorney General files an answer in such litigation alleging the defense that the plaintiff's sole remedy is under the workmen's compensation law, the filing of such answer shall suspend all further proceedings in such litigation other than the trial of the defense that the plaintiff's right of recovery is under the workmen's compensation law, until such defense has been finally determined by the court. An appeal to the Supreme Court from the order or judgment finally disposing of such defense may be taken by either party as in other cases."

Attorney General, at the request of the State Industrial Accident Commission, defended the action on behalf of both defendants, alleging in substance in a second amended answer that the shingle mill was being operated solely by the defendant Reinhold Fauser; that Ronald was employed by said defendant and not by the defendants jointly; that both defendants were subject to the Workmen's Compensation Law and had fully complied with all of its provisions; that regardless of whether Ronald was employed by either one or both defendants, the sole remedy of plaintiff is under the Workmen's Compensation Law and that the complaint should be dismissed.

No formal reply was filed to the second amended answer but the cause was tried as if the affirmative allegations of the second amended answer had been denied by the plaintiff. The parties stipulated that the issues should be tried by the court without a jury and after a trial, during which most of the facts were agreed upon, the court found that the employment of Ronald was unlawful and that as a consequence thereof, the remedy of the plaintiff was not exclusively under the Workmen's Compensation Law. From the order dismissing the answer filed by the State Industrial Accident Commission, this appeal was taken on behalf of both defendants.

The question presented by this appeal is whether at the time of his death Ronald was subject to the Workmen's Compensation Law and if so, whether the sole remedy on account of his death is under that act.

The Workmen's Compensation Law, which was originally enacted by Oregon Laws 1913, ch 112, is now contained in ORS 656.002 to 656.590 and will be hereinafter referred to as the "act." We will refer

to the pertinent provisions of the act in effect at the time of Ronald's death.

> ORS 656.002 (15). " 'Workman' means any person who engages to furnish his services, subject to the direction and control of an employer."

It will be noted that the above definition of workman is sufficiently broad to include both minors and adults.

> ORS 656.122. "If an employer is subject to ORS 656.002 to 656.590 as to any occupation, all workmen employed by him in such occupation are subject to ORS 656.002 to 656.590 as workmen, but not otherwise."

■ In view of the foregoing sections of the act, it is obvious that a workman, regardless of his age, is subject to the act if his employer is subject to the act as to the occupation in which the workman is engaged at the time of his injury. The intention of the legislature that the act should provide an exclusive remedy for injured workmen, except as otherwise specifically provided, is also clearly expressed in ORS 656.152, the material portions of which read as follows:

> "(1) Every workman subject to ORS 656.002 to 656.590 while employed by an employer subject to ORS 656.002 to 656.590 who, while so employed, sustains personal injury * * * by accident arising out of and in the course of his employment and resulting in his disability, or the beneficiaries of such workman, if the injury results in death, are entitled to receive from the Industrial Accident Fund the sums specified in ORS 656.002 to 656.590. * * *.

> "(2) The right to receive such sums is in lieu of all claims against his employer on account of such injury or death, except as otherwise specifically provided in ORS 656.002 to 656.590. * * *"

It will be helpful to consider briefly the legislative history of the act and particularly of the foregoing provisions. The broad definition of workman contained in ORS 656.002 (15) was included in the original act although in slightly different language. But the original act expressly excluded from its coverage minors employed under the minimum age prescribed by law. This exclusion was contained in the last sentence of section 11 of the original act, which read as follows:

> "All workmen in the employ of persons, firms or corporations who as employers are subject to this act shall also be subject thereto; provided, however, that any such workman may be relieved of the obligations hereby imposed and shall lose the benefits hereby conferred by giving to his employer written notice of an election not to be subject thereto in the manner hereinafter specified. Any workman of the age of 16 years and upwards shall himself exercise the election hereby authorized. The right of election hereby authorized shall be exercised on behalf of any workman under the age of 16 years by his parent or guardian. This act shall not apply to workmen of less than the minimum age prescribed by law for the employment of minors in the occupation in which such workmen shall be engaged."

The last sentence of the above section was repealed by Oregon Laws 1927, ch 312, § 1. By this repeal the legislature clearly expressed the intent that all minors should be covered under the act regardless of age.

That portion of section 11 providing that all workmen, including all minors, could by giving notice to the employer elect not to be subject to the act was repealed by Oregon Laws 1935, ch 61, § 1. The repeal of these two portions of section 11 left in effect only that part of the first sentence preceding the proviso which part

in slightly altered form is now ORS 656.122 quoted above.

■ Plaintiff contends that she is granted an election to sue Ronald's employer under ORS 656.132, which reads as follows:

"(1) A minor working at an age legally permitted under the laws of this state is considered sui juris for the purpose of ORS 656.002 to 656.590. No other person shall have any cause of action or right to compensation for an injury to such minor workman, except as expressly provided in ORS 656.002 to 656.590, but in the event of a lump sum payment becoming due under ORS 656.002 to 656.590 to such minor workman, the control and management of any sum so paid shall be within the jurisdiction of the courts as in the case of other property of minors.

"(2) If an employer subject to ORS 656.002 to 656.590 in good faith employed a minor under the age permitted by law, believing him to be of lawful age, and the minor sustains an injury or suffers death in such employment, the minor is conclusively presumed to have accepted the provisions of ORS 656.002 to 656.590. The commission may determine conclusively the good faith of such employer unless the employer had in his possession at the time of the accident resulting in such injury or death a certificate from some duly constituted authority of this state authorizing the employment of the minor in the work in which he was then engaged. Such certificate is conclusive evidence of the good faith of such employer.

"(3) If the employer holds no such certificate and the commission finds that the employer did not employ such minor in good faith, the minor is entitled to the benefits of ORS 656.002 to 656.590, but the employer shall pay to the Industrial Accident Fund by way of penalty a sum equal to 25 percent of the amount paid out or set apart under

such statutes on account of the injury or death of such minor, but such penalty shall not exceed $500."

Paragraph (1) of the above section was included in the original act of 1913 and consequently was in effect both when the act excluded minors employed under the age prescribed by law and also after such exclusion was repealed. Paragraph (1) does not purport to exclude any minor from coverage under the act nor to grant to any minor an election to sue his employer. There is no reason to expand by implication the meaning of this language to exclude minors from coverage under the act when another provision of the same act expressly excluded from its application minors "of less than the minimum age prescribed by law." This paragraph merely prescribed which minors shall be considered sui juris and thus able to deal with the commission without the aid of a guardian except to receive a lump sum payment. In construing the provisions of the Idaho Workmen's Compensation Law, in language almost identical to Paragraph (1) of ORS 656.132, in *Lockard v. St. Maries Lumber Co.,* 76 Ida 506, 285 P2d 473 the court said:

"* * * Appellant urges that the last sentence of the above section providing that a minor working at an age legally permitted shall be deemed sui juris for the purpose of the act, limits the application of the act to minors so working. This is not a correct interpretation of the provision. It is clearly intended to mean that a minor legally permitted to work may pursue his remedies under the act without a guardian and without let or hinderance of any other person, except in the case of a lump sum payment. * * *"

In construing a similar provision of the Workmen's Compensation Law of Arizona, the supreme court of

that state said in *S. H. Kress & Co. v. Superior Court of Maricopa County,* 66 Ariz. 67, 182 P2d 931:

> "The respondent contends that this describes the minors who are subject to the Act. Actually its plain wording shows that what this section does do is to provide that legally employed minors can have their own cause of action before the Board and collect their own money and need a guardian only for lump sum settlement. We read the statute to mean that by reverse implication illegally employed minors must be represented by a guardian before the Industrial Commission at all times. This section does not delineate which minors are subject to the Act, but instead describes how the legally employed minors as opposed to those 'illegally employed' shall enforce their remedies under it. * * *"

■ Paragraphs (2) and (3) of ORS 656.132 were added to the act by Oregon Laws 1921, ch 311. The legislative intent as expressed in these paragraphs is not entirely clear and in some respects the language is now obsolete. However, paragraph (2) does not purport to exclude any minor from coverage under the act nor to grant to any minor an election to sue his employer. This paragraph merely provides that under certain circumstances a minor employed under the age permitted by law is "conclusively presumed to have accepted the provisions" of the act. As we have heretofore pointed out, when this paragraph was enacted in 1921 the law gave all workmen, including all minors, upon entering the employment of an employer subject to the act the right to elect not to become subject to the act. The provisions of the act granting this right of election were repealed by Oregon Laws 1935, ch 48, § 6, thus rendering obsolete the language of paragraph (2) referring to an acceptance of the provisions of the act by an injured workman. If paragraph (2) was

intended to include under the act some minors who were excluded under the last sentence of section 11 of the original act the repeal of that sentence also rendered paragraph (2) obsolete.

Paragraph (3) likewise does not purport to exclude any minor from coverage under the act. Paragraph (3) clearly authorizes the commission to impose a penalty upon an employer who in bad faith employs a minor under the age permitted by law. This paragraph also clearly preserves to the minor his right to compensation but neither by express language nor by reasonable implication does this paragraph grant to any minor an election to sue his employer.

■ It is apparent from a reading of the act as a whole that the legislature never intended that a minor employed under the age permitted by law should have a right of election to take under the act or to sue his employer. In the several instances where the legislature has in unmistakable language granted to an injured workman, or if death results from the injury, his beneficiaries, an election to take under the act or seek a remedy against his employer or a negligent third person, the legislature has with meticulous care safeguarded the rights of the workman or his beneficiaries. In those instances the law provides that the workman may receive the benefits of the act and still bring the action for damages against the delinquent employer or negligent third party. ORS 656.312. If the amount recovered is more than the compensation benefits, the workman may retain the excess and if the amount recovered is less the commission is required to make up the deficiency so that the workman receives the full benefits under the act. ORS 656.324 (4) provides that if the injured workman elects to sue his delinquent employer the common law defenses of contributory

negligence, assumption of risk and fellow-servant rule are not available to the employer. In other words, neither the injured workman nor his beneficiaries are required to elect at their peril whether to take under the act or sue the delinquent employer or a negligent third party.

However, none of these beneficent provisions are made applicable to a minor employed under the age permitted by law. If such a minor has an election under ORS 656.132 (3), he apparently would be required to elect at his peril whether to take under the act or to sue his employer. If a minor elected to sue his employer and failed to recover, he would receive no compensation whatever. It seems obvious that if the legislature had intended such a minor to have an election, it would have extended to him the same protection and privileges in exercising his right of election that it provided for adult workmen.

In *Bigby v. Pelican Bay Lbr. Co.,* 173 Or 682, 147 P2d 199, Mr. Chief Justice BAILEY delineated with care the exceptions which permit an action to be brought by an employee or his beneficiaries against his employer, but did not include as one of them a minor working under the age permitted by law. We quote from the opinion in the Bigby case:

"When a workman has become subject to the act he can not recover from his employer for injuries sustained by him, unless the facts give rise to one of the exceptions specified in the act: Lull v. Hansen-Hammond Co., 126 Or 450, 270 P. 402; Jenkins v. Carman Manufacturing Company, 79 Or. 448, 155 P. 703. The exceptions which permit action to be brought by an employee or his beneficiaries against his employer are these: (1) If an employer engages in one of the hazardous occupations enumerated in § 102-1725, O.C.L.A., without

first giving notice to the accident commission of his intention to engage in such business, he 'shall not be entitled to' the protection of the act: § 102-1722, O.C.L.A. (2) An employer who is in default in payment of his contribution to the accident fund 'shall be liable to the injured workman, or to those claiming under him' " § 102-1742, O.C.L.A. (3) Action may be brought against an employer whose deliberate intention causes injury or death of a workman: § 102-1753, O.C.L.A. * * *"

There is nothing in our opinion in this case which conflicts with *King v. Union Oil Company,* 144 Or 655, 24 P2d 345, 25 P2d 1055, which is cited by plaintiff. In the King case a minor ten years of age was employed by Linn county during the school vacation to carry water for drinking purposes to a crew of men constructing a market road. The minor was burned on August 9, 1930, while giving a drink of water to the driver of a tractor which was then being filled with gasoline by an employee of the Union Oil Company. The work in which the county was engaged was one of the hazardous occupations enumerated in the act and the county when engaged in such work was subject to the act in the same manner as other employers. After an application for compensation had been accepted and compensation paid for both temporary total disability and for permanent partial disability, the father of the minor was appointed as guardian of his son and brought an action for damages against the Union Oil Company. In the original opinion it was held first, that because the injury occurred at the plant of his employer, the workman had no right of election to sue the negligent third party and second, that if a right of election ever existed it was waived by the receipt of full compensation under the act. In a petition for rehearing it was contended that the act applied only to such workmen as could

be legally employed, that a ten year old could not be legally employed under any circumstances and that such minor was therefore not subject to the act. The court disposed of this contention by stating that it had been "unable to find any law which made illegal the employment of David King in the work he was performing at the time of the accident." The court did not discuss the effect of the repeal of that part of the original act which excluded from the coverage of the act minors of less than the minimum age prescribed by law.

The plaintiff has again cited the decisions from other courts which were cited in support of the petition for rehearing in the King case. We have again examined those cases but believe they are not in point in view of the different statutory provisions involved and the legislative history of our act with regard to the coverage of minors. When the legislature decided in 1927 to extend the act to all minors it did so by the simple method of repealing the provision that had excluded from the coverage of the act minors of less than the minimum age prescribed by law.

In the case of *Lockard v. St. Maries Lumber Co.,* supra, the supreme court of Idaho said:

"Minors not being excepted from the provisions of the compensation act by the legislature, it is not within the prerogative of this court to except them by construction of the act.

"* * * * *

"The question is not in any way affected by the Child Labor Law. That law was enacted in 1907, ten years prior to the compensation law. It is not referred to or in any way amended or modified by the later enactment. The Child Labor Law provides appropriate penalties for its violation. If such penalties are not adequate, it is for the legislature

to increase them or otherwise provide for enforcement. It is not for this court by construction of an unrelated law to secure the enforcement of the Child Labor Law.  *   *   *"

■■ Although we have held that Ronald was subject to the act, we do not imply that Ronald's employer may not have violated the provisions of the child labor law, upon which question we express no opinion. We point out, however, that the child labor law is not impaired in the slightest degree by this decision and should be enforced whenever there is a violation thereof.

Our conclusion in this case is also supported by the following cases from other jurisdictions: *Rasi v. Howard Mfg. Co.* (1920), 109 Wash 524, 187 P 327; *Noreen v. William Vogel & Bros.* (1921), 231 NY 317, 132 NE 102; *Pierce's Case* (1929), 267 Mass 208, 166 NE 636; *Mellen v. H. B. Hirsch & Sons* (1947), 159 F2d 461.

The judgment is reversed and the cause remanded with instructions to enter judgment for the defendants.

WARNER, J., dissenting.

My dissent is occasioned primarily by the construction which the majority opinion gives to the following sections of the Workmen's Compensation Law, and which I hereinafter allude to as the Act. I refer to ORS 656.002 (15) defining the meaning of "workman" as used in the Act and to ORS 656.132 (1) declaring a minor "legally permitted under the laws of this state is considered sui juris" for the purposes of the Act.

The basic statement of the majority with which I cannot agree, reads:

"It will be noted that the above definition of workman [referring to ORS 656.002 (15)] is sufficiently broad to include both minors and adults.

"ORS 656.122. 'If an employer is subject to ORS 656.002 to 656.590 as to any occupation, all workmen employed by him in such occupation are subject to ORS 656.002 to 656.590 as workmen, but not otherwise.'

"In view of the foregoing sections of the act, it is obvious that a workman, regardless of his age, is subject to the act if his employer is subject to the act as to the occupation in which the workman is engaged at the time of his injury.  *  *  *"

I concede, as stated by the majority opinion, that the definition of "workman" as above set forth is broad enough to include both adults and minors, but, in my opinion, only minors who are "working at an age legally permitted under the laws of this state." (ORS 656.132 (1), supra) I further agree with the majority that ORS 656.152 makes the Act the exclusive remedy for all who are workmen as defined by ORS 656.002 (15), including all minors who are legally employable.

My position is: Unless the definition of "workman" is specifically amplified to include "minors illegally employed" or by words or phrases of similar import as does § 56-929 of Arizona's Code Annotated, infra, or as in § 35-1-43 of Utah's Code Annotated or where the code makes a declaration, as in Ohio, that: "For the purpose of  *  *  *  [Workmen's Compensation Law] a minor is sui juris,  *  *  *" (RC 4123.89) that a statutory definition of "workman" as found in ORS 656.002 (15) can only include in its meaning minors *legally employed.* I believe that to hold otherwise is in contravention of the plain meaning of the words of ORS 656.132 (1) which limits the sui juris status of the minor to one "working at an age legally permitted under the laws of this state."

The statement made in the forepart of the majority opinion concerning the nature of the Manke boy's em-

ployment indicates that those supporting that opinion share the view that his hiring was illegal. I add that it is made so by ORS 653.310 of our Child Labor Code, which, so far as pertinent, reads:

> "*No* child under 18 years of age shall be employed or permitted to work *in any employment* listed in subsection (2) of ORS 653.320, *unless* the person employing him procures and keeps on file * * * an age and schooling certificate * * *."
> (Emphasis mine.)

As I read ORS 653.310, a minor working is not of an age "legally permitted" to work in any of the enterprises stipulated in ORS 653.320, unless he is not only 14 or over and under 18 and unless he comes with the voucher testifying his age, health and fitness for the job and other details required to be evidenced in his "age and schooling certificate." ORS 653.420

Any doubt concerning the illegality of such employment is dispelled when we read ORS 653.430:

> "A failure to produce to the school authorities of the district where the child resides and to the police and to the commission any age and schooling certificate or list required by ORS 653.310, shall be *prima facie evidence of the illegal employment* of any person whose age and schooling certificate is not produced or whose name is not so listed."
> (Emphasis mine.)

Aside from Manke's being admittedly under age, there is no controversy that the documents required by ORS 653.310 were not present if ever in existence.

The construction I give to the language found in ORS 656.132 (1) is supported by the great weight of authority as I shall presently endeavor to demonstrate before giving attention to the cases upon which the majority opinion relies.

But let us again look to what ORS 656.132 (1) provides. The first and controlling sentence reads:

"A minor *working at an age legally permitted under the laws of this state* is considered sui juris for the purpose of ORS 656.002 to 656.590." (Emphasis mine.)

The first paragraph referred to comprehends every section of the Workmen's Compensation Law and makes a minor "legally permitted" to work amenable to every section of the Act. Being "legally permitted to work," he is sui juris and cannot avoid the operation of any provision of the Act by reason of his minority. Moreover, he thereby becomes entitled to claim any rights or privileges which the Act confers on the adult workmen who may be his associates, except as indicated by the second and last sentence of ORS 656.132 (1) which reads:

"* * * No other person shall have any cause of action or right to compensation for an injury to such minor workman, except as expressly provided in ORS 656.002 to 656.590, but in the event of a lump sum payment becoming due under ORS 656.002 to 656.590 to such minor workman, the control and management of any sum so paid shall be within the jurisdiction of the courts as in the case of other property of minors."

This second sentence of the section is something apart and in addition to what is provided in the first-quoted sentence. Aside from limiting the right of third persons to recover for injuries sustained by a legally-employed minor coming under the Act, it also excepts from the operation of the Act the right of such minor if injured to personally receive "lump sum" payments.

That part of ORS 656.132 (1) relating to when a minor is sui juris is neither novel nor is it peculiar

to the provisions of the Oregon Workmen's Compensation Law, alone. As we shall see, identical provisions, or nearly so, were common to the Workmen's Compensation Laws of many states, as disclosed by citations which follow. Nor, indeed, are the legal problems novel which are brought here by this appeal. They have all been met time and time again in other jurisdictions and with the exception of a very few states, as far as I am now apprised, have all been resolved contrary to the holding of the majority in Manke's case.

Although there is some conflict, the great weight of authority by far is to the effect that the employment of a minor contemplated by the provisions of the Workmen's Compensation Act is only a *lawful employment* and, therefore, *such compensation acts are inapplicable in the case of an injury to a minor whose employment is unlawful.* Under the circumstances, it follows that wherever the word "workman" appears in the Oregon act, it must be read as including only minors who are *lawfully* employed. The authorities hereinafter relied upon support my contention that Manke was *not lawfully* employed.

The cases which I marshal support the proposition that when a minor's employment is illegal under the Child Labor Laws of the state, he cannot be compelled to accept the provisions of the Workmen's Compensation Law of the state wherein the minor was employed and injured unless the statute is so drawn to clearly include such illegally-employed minors as beneficiaries of the local Workmen's Compensation Law, as in Arizona and Utah.

All the cases I employ are substantially the same in their basic facts. They came to the appellate court of the several states as appeals from actions against the minor's employer for damages for injuries sus-

tained by a minor while illegally employed, that is, employed in violation of some provision of the Child Labor Law of the injured minor's state. The employer's defenses in these cases all rest in whole or part upon the contention that the minor, as asserted in the Manke case, was amenable to the Workmen's Compensation Act and claim that the minor must, therefore, look solely to that act as the source of minor's only remedy. As an examination of these cases reveals, when the Child Labor Laws require a child of a certain age to have an age or other certification as a condition precedent to his employment, the absence of that certification, when required, rendered the child's employment illegal and disqualified the child as a beneficiary under the Workmen's Compensation Law, notwithstanding his age, alone, might warrant his employment in other jobs where no age and schooling certificate was required. Note particularly the cited cases from Rhode Island and Maryland.

Throughout the cases which follow, will be found strong statements emphasizing the importance of the Child Labor Laws and evidencing a greater judicial interest in the application and protection of the Child Labor Laws than in the injured minor's rights under the Workmen's Compensation Law and an apparent intent to harmonize the two, without sacrifice to the Child Labor Laws. Many jurists take note that the Child Labor Laws of their state were on the books much earlier than the Workmen's Compensation Act and, therefore, when the later act was adopted it was with reference to Child Labor Laws. They repudiate the suggestion that any part of the Child Labor Laws were by inference amended or changed by the Workmen's Compensation Law. No few of the cases cited regard the common-law right of an injured minor

illegally employed to sue his employer as a valued deterrent to employer breaches of the Compensation Laws.

The cases from Maryland, Rhode Island, Illinois, Michigan, Minnesota, Ohio, Wisconsin and Nebraska, which I will shortly refer to, are more than just authority for the proposition that a child of tender years who is employed contrary to the provisions of the Child Labor Laws is unlawfully employed and, therefore, is not a "workman" or "employee" under the Workmen's Compensation Law. These cases are also authority for a construction of ORS 656.132 (1) which bars as illegal employment, such work as resulted in young Manke's death, and ipso facto takes him out of the Workmen's Compensation Law.

These authorities from the states last named are here grouped for consideration because they reveal so many attributes in common with the Manke case. First, and foremost, is the fact that all construe provisions of the Workmen's Compensation Laws of their respective states which are identical or nearly identical with the language of ORS 656.132 (1), that is, the provision relative to a minor being "sui juris" under the act, and which constructions are directly opposite to the holding of the majority in the case at bar.

*Cases wherein the language of Workmen's Compensation Act, barring minors from the act, is precisely like or nearly identical to that of ORS 656.132 (1):*

In Maryland, we find by reading *William B. Tilghman Co. v. Conway* (1926), 150 Md 525, 133 A 593, that the provisions of its Workmen's Compensation Act excluding illegally-employed minors is framed in language identical to the one in Oregon and the one

in Rhode Island, hereinafter referred to. The Maryland act provides:

> "*A minor working at an age legally permitted under the laws of this state shall be deemed sui juris* \* \* \*." (133 A 595) (Emphasis mine.)

The section of the Child Labor Law of Maryland relied upon also follows closely the wording of ORS 653.310 in that it prohibits a child under 16 years of age to work in certain establishments "*unless* the person, firm \* \* \* employing such child procures and keeps on file, and accessible to" various officers named "\* \* \* the employment certificate \* \* \* issued to said child; \* \* \*." (Emphasis mine.)

In the Tilghman case, supra, a child over 14 and under the age of 16 did not have an employment certificate. The court held that in such case the employment was illegal, being specifically prohibited under the quoted section of the Child Labor Law above referred to, saying:

> "\* \* \* It being thus seen that the employment is illegal and prohibited by positive law, do the provisions of the Workmen's Compensation Law embrace and apply to such persons? We think not. \* \* \*"

Speaking of the Workmen's Compensation Law, the court said:

> "\* \* \* This legislation, however, must be construed with reference to other existing statutes and such interpretation put upon it as will harmonize with and give force to not only the Workmen's Compensation Law but the Child Labor Law as well. It could not have been the intention of the Legislature to include within the provisions of the Workmen's Compensation Law those persons who by the Child Labor Law were forbidden from engaging in certain employments and were prohibited

from being employed except when conditions, specifically set forth, had been complied with; in other words, the legislative branch of the state could not have intended by one law to prohibit the employment of minors, and by another law provide for compensation to such minors injured while engaged in the prohibited employment or occupation. * * *"

I note that the Child Labor Code was a part of the law of Oregon 10 years prior to the adoption of our Workmen's Compensation Law.

The Maryland case, after review of the authorities then available, including many cited in this dissenting opinion, noted:

"* * * It will thus be seen that the great weight of authority is in support of the view expressed in the authorities quoted. * * *"

In the Rhode Island case of *Taglinette v. Sydney Worsted Co.*, 42 RI 133, 105 A 641, the injured minor also failed to secure a required employment certificate testifying as to his age and the court held that the employment was illegal and for that reason not within the purview of the Compensation Act, the court saying, at page 642:

"Most, if not all, of the states which have a provision in their compensation acts relative to the employment of minors employ this language, 'minors who are legally permitted to work under the laws of the state.' It has been held that this language 'was intended to exclude from the statute [Workmen's Compensation Act] minors whose employment is prohibited by law.' * * * [Citations] The language of our act, 'A minor working at an age legally permitted under the laws of this state shall be deemed sui juris' is apparently employed in no similar act except in Ohio, where the Supplemental Act (effective January 1, 1914), in amendment of the Workmen's Compensation Act, employs

the identical language of our act. * * * [Citations] Inasmuch as the Compensation Act is silent as to the age when a minor is permitted to work [as is the Oregon act], it is obviously necessary that this provision must be construed in connection with section 1 of chapter 1378 [of what is there known as Factory Inspection Law, comparable, in part and purpose, to Oregon Child Labor Laws]. Doing this, we are of the opinion that the first ground of defendant's demurrer is not well founded. * * * The Factory Inspection Act (Gen. Laws 1909, c. 78), in so far as it affects child labor, and the Workmen's Compensation Act are both examples of modern social legislation along different lines. The one seeks to give the child a larger opportunity for future usefulness by requiring him to get some measure of education before engaging in certain kinds of work, and by protecting him in his years of immature mental and physical development from hazardous and hurtful employments. The other provides compensation and new remedies for those injured in industrial employments which involve less delay and expense and render more certain the certainty of recovery of compensation, when most needed, than existed under the older forms of remedy. Each has a beneficent design, and each is to be interpreted with a liberality calculated to effectuate its purpose. The argument, however, in favor of extending the Compensation Act by recognizing as legal the inclusion among employes those minors whose employment the Factory Act forbids does not commend itself. It may be noted that chapter 1378 of the Public Laws was enacted four years after the passage of chapter 831, and is therefore, in so far as their provisions conflict, if such be the case, controlling."

*Roszek v. Bauerle & Stark Co.* (1918), 282 Ill 557, 118 NE 991, is on all fours with the instant matter so far as it relates to points covered by the majority opinion. It, too, involved the employment of a minor who

was less than 16 years of age at the time of his employment. His labors were in a manufacturing establishment where he could not be employed at his age without having the permit to which reference is hereinafter made. The question determined was whether or not the minor was under and bound by the provisions of the Workmen's Compensation Act. The act in Illinois provided: "Every person in the service of another * * * including * * * *minors who are legally permitted to work under the laws of the state, * * *.*" (Emphasis mine.) (118 NE 991) In this respect it is like the Idaho statute (72.1011 I C) construed in the Lockard case, infra. The Child Labor Act of Illinois directed, among other things, that no child under the age of 14 should be employed in certain occupations including manufacturing establishments and, further, that no child under 16 years of age and over 14 shall be employed in various lines of industry including manufacturing establishments, "* * * *unless there is first produced and placed on file in such establishments * * * an age and school certificate, * * *.*" (Emphasis mine.) I interpolate to say that this is substantially the same provision as ORS 653.310 of Oregon law. The minor contended that he was not "legally permitted to work" at such employment and, therefore, not an employee in the terms of the Workmen's Compensation Act. As in Oregon, a penalty is provided in Illinois against any person for violation of the Child Labor Law. (Also see ORS 653.990) Like the minor in the case at bar, the Illinois child did not have the age and school certificate necessary to warrant his employment in the work in which he was engaged at the time of his injury. The court held that under the circumstances he could not lawfully be employed and if employed contrary to law,

he could not be regarded as an employee within the provisions of the Workmen's Compensation Act. The court said:

> "* * * The same rule applies where a minor between the ages of 14 and 16 years is *working without a permit having been obtained.* In both cases the employment is unlawful." (Emphasis mine.)

adding:

> "Without such permit he was no more legally permitted to work in defendant's factory than would be a minor under 14 years of age. In the one case a minor is not legally permitted to work at all, while in the other he is only legally permitted to work upon obtaining the permit required by the Child Labor Law. If plaintiff was not legally permitted to work, he is not embraced within the provisions of the Workmen's Compensation Act and his action to recover damages was properly brought."

I add that this case is frequently cited in other states as authority for the propositions stated.

In *Kruczkowski v. Polonia Pub. Co.* (1918), 203 Mich 211, 168 NW 932, we again find a minor between 15 and 16 years of age who was injured while working in a hazardous employment. This he was doing without obtaining a permit from the proper authorities as required by the Child Labor Laws of the state of Michigan. Here, again, the court was required to construe a provision of the Workmen's Compensation Law which defined the persons covered by the act as "* * * *including minors who are legally permitted to work under the laws of the state * * *.*" (Emphasis mine.) After review of the authorities there cited, the court said:

> "* * * In our opinion the better rule is that, to permit a minor employe to be regarded as within

the meaning and provisions of the Compensation Act, there must be a valid contractual relation, and a contract to be employed in the work in which he was injured; that a contract which is illegal, or in violation of a statute, will not suffice.

"A valid contract of employment in the work in which a minor was injured is essential in order that such a person may be an 'employe' under the act. The statutes regulating the employment of minors are humane statutes, and their violation is made a misdemeanor. Their object in part, is the protection of the child. * * * (168 NW 933)

"We should not lose sight of what is best for the child. The law not only discourages, but prohibits, the employment of children in hazardous employments. It is casting no disparagement upon the Workmen's Compensation Law to hold that its provisions were not intended to apply to children who are unlawfully set at work in hazardous employments, and that when they are injured in such employments, without fault or negligence on their part, that they should have the benefit of a common-law action against the wrongdoer, where the defenses of assumption of risk and negligence of a fellow servant are not available to a defendant. *Such a holding will, in our opinion, have a tendency to discourage such illegal employment and be a benefit to the minor. * * *"* (Emphasis mine.) (168 NW 933-4)

In *Westerlund v. Kettle River Co.* (1917), 137 Minn 24, 162 NW 680, the section of the Minnesota compensation statute construed provided that the term "employe" shall include, among others, *"minors who are legally permitted to work under the laws of the state."* (Emphasis mine.) The court said that it permitted of no construction other than that the legislature intended thereby to exclude from the act minors whose employment was prohibited by law. (162 NW 681)

It also added that the use of the words "legally permitted to work" was not intended to refer to permissive legislation. There we also read:

"* * * we have statutes, and have had for many years, known as the child labor laws, by which the employment of minors of certain age is expressly prohibited in specified classes of employment deemed detrimental to their moral welfare and dangerous to their life or limb. And in making use of the language quoted [that is, "minors who are legally permitted to work under the laws of the state"] it is apparent that the Legislature intended to preserve the status of minors in respect to their employment in dangerous occupations, and to remove them from the Compensation Act when employed in violation of law. No other construction of the statute can be adopted that would not be in discord with our whole legislative policy upon the subject. This view is sustained by other courts. (Citations) It follows that the Compensation Act can have no application to the case of an injured minor who was employed in violation of any of the child labor laws of the state." (162 NW 681)

The pertinent provision of the Ohio Workmen's Compensation Act, as it was in 1918 (It has since been amended. See Ohio R C 4123.01), included: "* * * *minors who are legally permitted to work for hire under the laws of the state.*" (Emphasis mine.) This was construed in *Acklin Stamping Co. v. Kutz,* 98 Ohio St 61, 120 NE 229, to exclude from the operation of the provisions of the act minors whose employment is illegal. By recourse to the Child Labor Laws of that state, it was determined that the minor plaintiff was employed in work and at an age and during times of the day which were prohibited. The trial court was reversed and the case remanded for trial as an action for damages against the employer.

The minor in *Stetz v. F. Mayer Boot & Shoe Co.* (1916), 163 Wis 151, 156 NW 971, was injured while operating a machine of defendant. Under the law of Wisconsin, the employment of children between the ages of 14 and 16 years in any factory or workshop was prohibited "* * * unless there is first obtained from the commissioner of labor * * * *a written permit authorizing the employment of such child * * *.*" (Emphasis mine.) The injured minor had no such permit. The Workmen's Compensation Act of Wisconsin employs the same language with respect to minors as was referred to in the Roszek case, supra, and others cited, i.e., the phrase reading: "* * * *minors who are legally permitted to work under the laws of the state* * *.*" (Emphasis mine.) In the Stetz case, it was held that that part of the Workmen's Compensation Law "* * * seems plain that the statute includes only such minors who at the time of contracting are legally authorized to enter the employer's service * * *," the legislative intent being to enable a minor who has the right to work to make a contract for his employment the same as adults. The court held:

> "The provisions of this statute can only apply to minors who are at the time of contracting to enter the service of another authorized and permitted under the law to engage in such service and employment the same as adults."

In Wisconsin at that time, the Child Labor Laws included a provision akin to ORS 653.310 in that it prohibited "the employment of any child between the ages of fourteen and sixteen years to work in any factory or workshop, etc., *without first obtaining a written permit as therein specified. * * *"* (Emphasis mine.)

In *Benner v. Evans Laundry Co.* (1929), 117 Neb 701, 222 NW 630, the child-plaintiff was between 15 and 16 years old at the time she received her injury in a laundry. The employer, however, had failed to secure the employment certificate required when a minor was over 14 and under 16 years of age as a condition precedent to such employment. Again the question arose whether the minor came under the Compensation Law of Nebraska providing that it "\* \* \* is applicable to an employee who is a minor of an age when he is 'legally permitted to work under the laws of the state,' \* \* \*." The court concluded after review of the authorities:

> "\* \* \* it may confidently be said that the great weight of authority in the review of statutes and situations like that now before us constrains us to hold that a minor under 16 and over 14 employed in a laundry and injured \* \* \* may maintain an action at common law for damages against the employer who has failed to procure the employment certificate prescribed by \* \* \* [the Nebraska law]. The law does not compel such a minor in such circumstances to be classified \* \* \* among those in the service of an employer, as 'including minors who are legally permitted to work under the laws of the state, \* \* \*.'" (222 NE 631)

The following cases are of the same factual background as is present in the cases from Maryland, Rhode Island, Illinois, Michigan, Minnesota, Ohio, Wisconsin and Nebraska last cited. The only difference is that they do not reveal that the Workmen's Compensation Law to which they refer carries provisions so identical to ORS 656.132 (1) of our law, or make no specific reference to any provision of their Workmen's Compensation Law giving a sui juris character to a child

of 18 or under. They do hold with the other cases that an illegally-employed minor is not within the Workmen's Compensation Act and stress the Child Labor Laws of their respective states and the need of certification documents as necessary to the legal employment of any minor when required to be of a certain legal working age in certain work. They are: *New Albany Box & Basket Co. v. Davidson* (1920), 189 Ind 57, 125 NE 904; *Sechlich v. Harris-Emery Co.* (1918), 184 Iowa 1025, 169 NW 325; *Hetzel v. Wasson Piston Ring Co.* (1916), 89 NJL 201, 98 A 306; *Lincoln v. National Tube Co.* (1920), 268 Pa 504, 112 A 73; *Mangus v. Proctor-Eagle Coal Co.* (1921), 87 W Va 718, 105 SE 909; *Galloway v. Lumbermen's Indemnity Exch.* (1921), Tex Civ App, 227 SW 536, aff 238 SW 646; *Rock Island Coal Mining Co. v. Gilliam* (1923), 89 Okla 49, 213 P 833; *Manning v. American Clothing Co.* (1922), 147 Tenn 274, 247 SW 103; *Widdoes v. Laub* (1925), 33 Del 4, 129 A 344; *Wlock v. Fort Dummer Mills* (1925), 98 Vt 449, 129 A 311. Also see Annos 14 ALR 819; 33 ALR 338; 49 ALR 1436; 60 ALR 848; 83 ALR 417; 142 ALR 1018; 71 CJ 499, Workmen's Compensation Acts § 227.

The tenor of what the court said in *Rock Island Coal Mining Co. v. Gilliam,* supra, is evident in everyone of the 18 cases I have heretofore cited to the point. This thought is summarized in the Gilliam case as follows:

"* * * The Workmen's Compensation Law was not intended to prescribe rights and remedies for persons engaged in unlawful or criminal occupation. It in no manner destroys the purposes of the Workmen's Compensation Law to hold that its provisions were not intended to apply to children who are unlawfully set at work in hazardous employments and that where they are injured in such

employments they have a common-law action against the employer." (213 P 835)

Included in the foregoing cases are those which were presented in the briefs for rehearing in the King case tendered in support of the contention that the "* * * workmen's compensation law applies to and protects only such employees as can be legally employed, * * *." (144 Or 668) They were there referred to by Justice BAILEY as "numerous well-reasoned decisions." The contention made was not controverted in the King case, and very appropriately so, because the King boy was 10 years old and that case correctly held he was legally employed. (144 Or 669 and 671) However, it is difficult to read the King case and avoid the conclusion that had the minor been illegally employed as determined by the Child Labor Code, the court would not have held that his illegal employment barred a recovery under the Workmen's Compensation Law as in the cases heretofore cited.

I am not unmindful that some of the states from whence the foregoing citations come have since amended their respective Workmen's Compensation Laws to give a qualified protection to some minors. It varies in form and extent. But I am unable to find where the Supreme Court of any of those states has voluntarily retreated from its interpretation of an illegally-employed minor's rights under the Workmen's Compensation Law of its state as that law existed at the time of the court's opinion. The courts have universally left the making of any changes in the Workmen's Compensation Law concerning the rights of minors, desirable as they may seem, to the legislatures of their respective states. This course is directly opposite to the method followed by the majority in this case, for, in effect, the majority opinion is a judicial

amendment of our Workmen's Compensation Law and in derogation of the objectives of our Child Labor Code.

I now give attention to the two cases upon which the majority places its prime reliance: one is from Arizona and the other from Idaho. For the reasons which follow, I am persuaded that neither has applicability here, unless this court desires to align itself with the small number of states which hold contra to the great weight of authority.

Although some of the provisions of the Arizona Workmen's Compensation Law are perhaps similar to those in the Oregon act, they are tempered or changed by other sections of the Arizona Code which work a profound difference and produce an entirely different result than is to be attained from a reading of the Oregon law, particularly ORS 656.132 (1).

When we examine with critical eye *S. H. Kress & Co. v. Superior Court of Maricopa County,* 66 Ariz 67, 182 P2d 931, one of the two cases upon which the majority place great dependence, we find that the persuasive considerations leading to the holding are two: first, its unique statute defining an "employee" or "workman," and secondly, the fact that the minor made no election not to come under the Workmen's Compensation Law of that state.

In the Arizona law, § 56-929, ACA 1939 establishing definitions, reads, in part, as follows:

> "The terms 'employee,' 'workman,' and 'operative,' as used herein, mean:
>
> \* \* \* \* \*
>
> "Every person in the service of any employer subject to this article as defined in the preceding section including \* \* \* minors *legally or illegally permitted to work for hire,* \* \* \*." (I have repeated the emphasis as made by the court in its opinion.)

Therefore, says the court in the Kress case, supra (182 P2d 935), "* * * while this boy was an illegally employed minor, he nevertheless was an 'employee' within the terms of the Act."

I digress to observe that if we delete this reference to "minors legally or illegally" employed from the Arizona definition of a workman, it would otherwise be in substantial accord with the Oregon definition of "workman" as found in ORS 656.002 (15).

The court then proceeds to take from the minor his only other possible exclusion to coverage by the Arizona law by the following reference to his failure to make an election to come under or remain out of the act's operation, as follows (182 P2d 935):

"Being contemplated by the Act as an 'employee' it must follow that the Act is this minor's sole remedy, if he agreed to be bound by it.

"Sec. 56-944 states that all employees are conclusively presumed to come under the Workmen's Compensation Act unless they give notice to the contrary prior to injury. As we have already said, this boy is an 'employee' and no notice being given to the contrary in his case, he is conclusively presumed to be bound by the Workmen's Compensation Act."

No right of election of the kind permissible in Arizona prevails in Oregon.

The court then gives recognition to the weight of authority upon which I rely and feel this court should follow in this matter, by saying (182 P2d 936):

"Thus the Utah court [referring to Ortega v. Salt Lake Wet Wash Laundry, 108 Utah 1, 156 P2d 885, which it previously distinguishes], itself, recognizes that under a statute which includes illegally employed minors as employee by implication (California) and one such our own which spe-

cifically so designates them, *the rule is properly different."* (Emphasis mine.)

Thus, we find the Kress case, supra, is taken out of the operation of statutes similar to Oregon's ORS 656.132 (1) by the clear and positive provisions of Arizona's § 56-929, supra. No rules of statutory construction were, therefore, necessary to support the Arizona court's conclusion. Moreover, the last quotation from the Arizona case becomes authority for the position I would have the majority here support, that is to say, were it not Arizona's unique statutory provision bringing illegally-employed minors under its Workmen's Compensation Law, "the rule is properly different."

*Lockard v. St. Maries Lumber Co.,* 76 Ida 506, 285 P2d 473 (1955) is the other case to which the majority opinion gives special consideration. I make it second in my analysis for the reason that the conclusion there attained relies solely upon the holding in the Kress case, supra. Yet Idaho has no definition of "employee" or "workman" which includes the words "minors * * * illegally permitted to work for hire" or phrases of like import. § 72-1011 Idaho Code. It avoids the issue of the effect of many of those cases which I have hereinbefore cited which hold that the definitions of "employee" without including provisions like the Arizona definition, are held to refer only to legally-employed workmen. This is accomplished in the Idaho case by saying that "Contracts of minors are not void, though subject to disaffirmance. § 32-103, I.C. Hence, the employment contract of a minor, although entered into by the employer in violation of the Child Labor Law, is not void and is sufficient to create the relationship of employer and employee under the Workmen's Compensation Law." Section 32-103, I.C. is not a part of

the Workmen's Compensation Law or Child Labor Laws of that state, but is included in what is its domestic relations code. The pertinent part reads:

"In all cases other than those specified in the next two sections * * *, if made whilst he is under the age of eighteen, may be disaffirmed by the minor himself, either before his majority or within a reasonable time afterward; * * *."

Such, in my opinion, is a tortured construction of that section if the foregoing statement is to be accepted as giving the quality of "voidability" to minors' contracts which are *ab initio* void as contrary to public policy as we would normally regard them in Oregon. But whether the construction of § 32-103, I. C. is correct or not, it is enough to say that Oregon has no statute like it nor any statutory rule respecting the voidability of contracts made by minors.

This court, however, has said: "Generally speaking, there can be no doubt that a contract is illegal if it violates a constitutional statute, or if it cannot be performed without the violation of such a statute. * * *" *Turney v. J. H. Tillman Co.*, 112 Or 122, 128, 228 P 933. Such, indeed, is the very kind of contract that subsisted between 17 year old Manke and his employer. The Turney case reiterates the statement of Justice HARRIS, who, in *Uhlmann v. Kin Daw*, 97 Or 681, 689, 193 P 435, says. "An agreement is illegal if it is contrary to law, morality or public policy: * * *." Our Child Labor Law has public policy as its cornerstone.

In *Galloway v. Lumbermen's Indemnity Exch.* (1921), Tex Civ App, 227 SW 536, where a statute made it illegal to employ a child under fifteen years, it was held that a minor under fifteen years, who was working in a sawmill when injured, was not an employee

within the Compensation Act. The court said: "We think it clear *that a minor whose employment is admittedly illegal,* and made punishable by the criminal statutes of this state, *cannot be said to be an employee under the Workmen's Compensation Act of this state.*" (Emphasis mine.) Also see 17 CJS 555, Contracts § 201.

I submit that one cannot read ORS 653.305 to 653.340 and 653.990 and 653.430, supra, respecting the prima facie evidence of illegal employment, of the Oregon Child Labor Act and escape the conclusion that a contract of employment made by and between an employer and a minor, which is a hiring for service prohibited by those sections, is void as against public policy, unless they can point to some specific provision of our Workmen's Compensation Law which exonerates it from the stigma of illegality for the purposes of the Workmen's Compensation Law in the clear and precise manner as done by the Arizona statute. Section 56-929, supra, and the statutes of other states in phrases of like import.

But the Idaho case is also clearly at odds with one of the most cogent observations made by the Arizona court in the Kress case, supra, where it is said, in essence, that unless the act carries words which impress the Workmen's Compensation Law upon illegally-employed minors "the rule is properly different." (182 P2d 936, supra)

Moreover, the employee in Idaho has no right of election to take himself out of the provisions of the Idaho Workmen's Compensation Law as did the minor in the Kress case, supra.

Toward the end of the majority opinion we find reference to four cases submitted without analysis said to give support to their conclusions. These cases

are: *Rasi v. Howard Mfg. Co.* (1920), 109 Wash 524, 187 P 327; *Noreen v. William Vogel & Bros.* (1921), 231 NY 317, 132 NE 102; *Pierce's Case* (1929), 267 Mass 208, 166 NE 636; *Mellen v. H. B. Hirsch & Sons* (1947), 159 F2d 461.

· None of them discuss or refer to language remotely similar to that found in ORS 656.132 (1), supra, if, in fact, comparable provisions were present in the Compensation Acts of those jurisdictions.

Three of the four cases last cited by the majority opinion have long been conventionally classified with those in the minority group holding adversely to the weight of authority. They are the Washington Rasi case, supra (see Annos 14 ALR 821 and 49 ALR 1428), the New York Noreen case, supra (see Annos 33 ALR 340 and 49 ALR 1428) and the Massachusetts case, Pierce's Case, supra (see Annos 83 ALR 420).

Notwithstanding that New York is definitely aligned with a relatively small minority, the court in *Robilotto v. Bartholdi Realty Co.*, 172 NYS 328, although it felt itself bound by *Ide v. Faul*, 166 NYS 858, expressed the opinion that the conclusions reached in *Hetzel v. Wasson Piston Ring Co.*, supra (89 NJL 203), and *Stetz v. F. Mayer Boot & Shoe Co.*, supra (163 Wis 151) (both of these cases I have hereinbefore cited in support of the majority rule), were preferable as authority because they were based on sounder reasoning.

The majority opinion in conclusion observes that the Child Labor Law is not impaired in the slightest degree by the decision made. It is a conclusion with which I cannot agree. It is true that the decision does not, in any sense, give legality to any infraction of the Child Labor Law upon the part of the employer. But its impact upon that beneficent act of protection to the

youth of the state is to remove one of the most potent forces of deterrent to any breach by an employer. True, the act provides penalties for its breach by ORS 653.990. These penalties are, however, so relatively small and innocuous they can hardly be taken seriously as a persuasive factor in restraining any employer from hiring minors of a prohibited class if under pressing need for workers or any employer who is so callous to the necessity for the kind of protection it affords to children or so avaricious that he will willingly risk arrest and conviction in order to effect a saving in his payroll. Assuming diligence upon the part of all agencies charged with the enforcement of the Child Labor Laws, they could not have been speedy enough to have prevented the death of young Ronald Manke who was drowned in the course of his employment the very first day of his work. Will the small misdemeanor penalties of ORS 653.990 satisfy society for this flagrant breach of the Child Labor Law?

One of the most effective deterrents to the illegal employment of minors is found in the fact that such children do not have to look to the Workmen's Compensation Law for recovery for physical injuries negligently caused in the course of their wrongful employment because such minors have recourse to the common-law right of action and with the possibility of obtaining far greater damages for their injuries than could be expected under the Workmen's Compensation Law. This valuable right in many states is recognized as a discouragement to the illegal hiring of minors. This is revealed in some of the decisions I have cited in support of the majority rule. See *Kruczkowski v. Polonia Pub. Co.* (Mich), supra, as illustrative. The loss of the significant and important threat of a common-law action against the Child Labor Law defying

an employer for injuries to an illegally-employed minor in compelling greater respect for and proper observance of the Child Labor Laws of this date does impair the laws effectiveness to a great degree, in my opinion, contrary to the view expressed by the majority opinion.

I think it would be more exact to say that the application of the rule for which I contend would not impair in the slightest degree the Workmen's Compensation Law and until the legislature in its wisdom sees fit to clearly bring all minors, including those illegally employed, under the Act. Until then we had better not destroy any one of the safeguards to the Child Labor Law by adopting the minority rule or by recourse to technical rules of judicial construction as are made manifest by the majority opinion.

To say that an illegally-employed minor cannot partake of the benefits accorded by the Act is not to construct a sword, so far as the Compensation Act is concerned, but rather to fashion a shield for the protection of our Child Labor Laws.

If we do otherwise are we not tempting all employers to wink at breaches of the Child Labor Law? We must be mindful that the provision of the Child Labor Law which was breached is but one of its sections prohibitive of employment of a kind: others are: ORS 653.330, as to minors under 18, in certain logging operations; ORS 653.335, as to minors under 18, as elevator operators; and ORS 653.340, as to minors under 16, as messengers and minors under 18 and over 16, as messengers, except at certain hours of the day.

As a matter of public policy, is it not more important to first preserve the restraints against illegal hiring of children than to give thought about where and when they are to collect moneys for such injuries as they may sustain if illegally hired?

To do otherwise are we not unnecessarily limiting our perspective and viewing the child labor legislation solely as a protection to the child's physical well-being, which, of course, in the event of injury can be compensated for in money? That is an important factor, but the Child Labor Law is not that restricted in its wise and protective reach. Ever since the adoption of the first Child Labor Act in Oregon in 1903, the law has had a dual purpose. It was designed to protect certain minors from conditions of labor which might have a pernicious effect on their *health* and also on their *morals*. It has since been many times amended to strengthen this clear objective of long-established public policy. But we must not overlook the fact that the Workmen's Compensation Law does not and cannot compensate the minor employed in violation of the Child Labor Code for such damages as a minor may sustain to his morals or character from work of a prohibited kind, particularly from possible and unavoidable association with disreputable persons who are adult. Our clear duty, then, should be to cast our weight on the side which tends to strengthen and maintain every present deterrent to a breach of the laws designed to protect children until the legislature can devise a more effective means, as has been done in other states, where their Workmen's Compensation Law once carried provisions similar to those construed in the opinion of the majority and not on the side which will erode and weaken any one of the most efficient restraints to breach of such acts. We can do this by adhering to the majority rule and the avoidance of technical rules of construction.

I would affirm the judgment of the circuit court.